# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO MORRIS, individually and on behalf of other similarly situated individuals,<br><br>      Plaintiff,<br><br>  v.<br><br>UNILEVER UNITED STATES INCORPORATED,<br><br>      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Antonio Morris, (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Unilever United States, Inc. ("Defendant" or "Unilever") with respect to the marketing and sale of Suave 24-hour Protection Powder aerosol antiperspirant ("Suave Antiperspirant" or the "Product" or "Products").[1]

2. Defendant does specifically list the active ingredients of the Products but fails to disclose that the Products contain "benzene."

3. Benzene is a widely recognized and incredibly dangerous substance, especially in the context of applying it to the skin.

---

[1] Discovery may reveal that additional Unilever products are within the scope of this Complaint. As such, Plaintiff reserves the right to amend his Complaint and/or class definition to include additional Unilever products.

1

4. Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[2]

5. For example, benzene is known to harm the bone marrow, and long exposure to benzene can lead to blood cancer, such as leukemia.[3]

6. Consumers like the Plaintiff trust manufacturers such as Defendant to sell a Product that are safe and free from harmful known toxins, including benzene.

7. FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm"). FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download.

8. The Product's benzene concentration is 5.21 ppm, *more than two and-a-half times* the FDA concentration limit of 2 ppm.

9. Plaintiff and those similarly situated ("Class Members") certainly expect that the aerosol and spray products they purchase will comply with its labeling and not contain any knowingly harmful substances like benzene.

10. Defendant specifically manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers.

11. Unilever markets and sells aerosol deodorant and antiperspirant as part of its Suave product line. Unilever has sold Suave personal care products for the last 75 years, and,

---

[2] Huff, James. Benzene-induced cancers: abridged history and occupational health impact. International Journal of Occupational Environmental Health. 2007 Apr-Jun;13(2):2-17. doi: 10.1179/oeh.2007.13.2.213. PMID: 17718179.
[3] https://emergency.cdc.gov/agent/benzene/basics/facts.asp, (last accessed January 20, 2022).

2

according to Unilever, "the brand has provided high-quality, value products that work as well as premium brands."[4]

12. Unilever's website emphasizes that "[t]he safety of our products is our top priority. That is why each new product innovation is evaluated systematically and scientifically by our team in the Safety and Environmental Assurance Centre (SEAC). Our scientists consider any safety risks to the consumers who use our products, to the workers who make them, and to the environment to ensure all our products are safe to use."[5]

13. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product—the packaging and labels themselves. Consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Product.

14. However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product contains benzene, which Defendant does not list or mention anywhere on the Product's packaging or labeling.

15. Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of what is in the Product when they purchased it.

16. Defendant's Product containing a known human carcinogen has no value.

17. As set forth below, spray products that contain benzene are in no way safe for humans and are entirely worthless.

---

[4] https://www.unileverusa.com/brands/beauty-personal-care/suave/, (last accessed on January 20, 2022).
[5] https://www.unilever.com/planet-and-society/safety-and-environment/keeping-people-and-the-environment-safe/, (last accessed on January 20, 2022).

3

18. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA") 815 ILCS 505/1, et seq. and the common law.

19. Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

20. Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in products that they and their family members put on and/or into their bodies. Companies such as Defendant have capitalized on consumers' desire for healthy and safe products, and indeed consumers are willing to pay, and have paid, a premium for these products.

21. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as benzene, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Product contains on the Product's packaging or labels.

22. When consumers look at the Product's packaging there is no mention of benzene. Benzene is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Product. This leads reasonable consumers to believe the Product does not contain dangerous chemicals like benzene.

23. However, despite this, the Products contain benzene.

24. Research has confirmed that there is no safe level of benzene exposure.[6]

---

[6] Smith, Martyn T. Advances in Understanding Benzene Health Effects and Susceptibility. Annual Review of Public Health. 2010 Jan-Apr; 31(1):133-148, doi: 10.1146/ doi: 10.4103/annurev.publhealth.012809.103646.

25. Benzene has been recognized, acknowledged, and accepted as a well-known health hazard and human carcinogen for approximately a century.[7]

26. The National Toxicology Program (hereinafter "NTP") has regarded benzene as "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[8] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer (hereinafter "IARC").

27. According to the Center for Disease Control ("CDC"), benzene can cause severe health issues such as anemia, immune system damage, and cancer.[9]

28. Direct benzene exposure through the skin is particularly concerning. For example, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[10]

29. Research has revealed that benzene can be absorbed into the body through the lungs and across the skin.[11]

30. This makes benzene exposure from body sprays especially troubling because the spray is put directly onto the skin, with the remnants flying through the air likely to be at least partially breathed in by the user and absorbed into their lungs. Thus, even a relatively low concentration limit can result in very high total benzene exposure.

31. This is why recent research revealing benzene in Defendant's Products is particularly concerning.[12]

---

[7] Huff, *supra* note 2.
[8] https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf, (last accessed on January 20, 2022).
[9] https://emergency.cdc.gov/agent/benzene/basics/facts.asp, (last accessed on January 20, 2022).
[10] *Id.*
[11] https://www.atsdr.cdc.gov/toxprofiles/tp3-c1.pdf, (last accessed on January 20, 2022).
[12] https://news.yahoo.com/procter-gamble-issues-voluntary-recall-163826462.html?fr=sycsrp_catchall, (last accessed on January 20, 2022).

32. Indeed, in testing, Valisure, an analytical pharmacy and consumer protection organization, found average concentrations of benzene above the FDA concentration limit of 2 ppm in 16 spray deodorants, including the Product which is manufactured and sold by Unilever under its Suave brand.[13]

33. In particular, Valisure found benzene concentrations of 5.21 ppm in Suave 24 Hour Protection Powder Aerosol, 2.6 times the FDA concentration limit.

34. Defendant's false, misleading, omissions, and deceptive misrepresentations regarding the ingredients of the Product is likely to continue to deceive and mislead reasonable consumers and the public, as it has already deceived and misled Plaintiff and the Class Members.

35. Defendant's concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies. Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed. Defendant knows that if it had not omitted that the Product contained benzene, then Plaintiff and the Class would not have purchased the Product at all.

## JURISDICTION AND VENUE

36. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class members is a citizen of a state different from the Defendant.

37. This Court has personal jurisdiction over Defendant because it has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons

---

[13] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf, (last accessed on January 20, 2022).

throughout the United States, because Defendant placed the Product into the stream of commerce directed at this District, and because Defendant purposely availed itself of the laws of the United States and the State of Illinois.

38. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintif resides in this District, a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant conducts substantial business in this District.

## **PARTIES**

39. Plaintiff is a citizen and resident of the State of Illinois. Plaintiff resides in Chicago, Illinois. During the applicable statute of limitations period, Plaintiff purchased Defendant's Product that contained benzene.

40. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Product containing benzene, Plaintiff would not have been willing to purchase the Product. Plaintiff purchased, purchased more of, and/or paid more for, the Product than he would have had he known the truth about the Product. The Products Plaintiff received were worthless because they contain the known carcinogen, benzene. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

41. Defendant Unilever United States, Inc. is part of an international consumer goods company, the Unilever Group, which consists of two parent companies, Unilever NV and Unilever PLC, together with group subsidiaries, and operates as a single economic entity.

42. Unilever NV is a public limited company registered in the Netherlands, which has listings of shares and depositary receipts for shares on Euronext Amsterdam and of New York Registry Shares on the New York Stock Exchange.

7

43. Unilever PLC is a public limited company registered in England and Wales which has shares listed on the London Stock Exchange and, as American Depositary Receipts, on the New York Stock Exchange.

44. The Unilever Group has company headquarters in Rotterdam, Netherlands, London, England, and the United States. The Unilever Group operates in the United States under its subsidiary Unilever United States, Inc., a corporation headquartered and located at 800 Sylvan Avenue, Englewood Cliffs, NJ 07632, incorporated within the State of Delaware with entity number 0842944, and registered with the New Jersey Secretary of State with entity number 0100400419.

45. At all relevant times hereto, Defendant was engaged in manufacturing, marketing, distributing, and advertising the Products throughout the United States. Defendant created and/or authorized the false and misleading advertising and labeling of the Products.

## CLASS ALLEGATIONS

46. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below defined Classes:

> **National Class**: All persons in the United States who purchased the Products during the applicable statute of limitations period.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products during the applicable statute of limitations period.[14]

---

[14] The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce within the State of Illinois. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A et seq.);

**Illinois Subclass**: All persons in the State of Illinois who purchased the Products during the applicable statute of limitations period.

47. The National Class, Consumer Fraud Multi-State Class, and Illinois Subclass shall be referred to collectively throughout the Complaint as the "Class" unless otherwise referred to separately, and the collective membership will be referred to as "Class Members."

48. The Class is properly brought and should be maintained as a class action under Rule 23(a), *et seq*, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

49. **Numerosity:** Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

50. **Commonality:** The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

A. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

B. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

---

Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New York, (N.Y. Gen Bus. Law Secs. 349 and 350); New Jersey (N.J. Stat. § 56:9-1, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS. STAT. § 100.18, et seq.).

C. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

D. Whether Defendant's false and misleading statements and omissions concerning its Products was likely to deceive the public; and

E. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

51. **Typicality:** Plaintiff is a member of the Classes. Plaintiff's claims are typical of the claims of each of the Class's Members in that every member of the Classes was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

52. **Adequacy:** Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

53. **Predominance:** Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Classes. The issues of the Classes fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

54. **Superiority:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Members of the Classes is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Members of the Classes may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Members of the Classes;

g. The Classes are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

55. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

56. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2):** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Product confers the advertised benefits and is otherwise properly labeled with all applicable warnings and/or disclosures regarding the presence of benzene.

57. Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class and Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e., Defendant has marketed its Product using the same misleading and deceptive labeling to all of the Class Members).

58. Any final injunctive relief or declaratory relief would benefit the Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the true nature of the contents of the Products.

//

//

//

## CAUSES OF ACTION

### COUNT I

### Violation Of State Consumer Fraud Acts
### (On Behalf Of The Multi-State Class)

59. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60. The Consumer Fraud Acts of the States in the Multi-State Class[15] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

61. Defendant intended that Plaintiff and each of the other members of the Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

62. Had the truth been known, Plaintiff and other Multi-State Class Members would not have purchased Defendant's Products, or would not have paid as much for the Product.

63. As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Multi-State Class have sustained damages in an amount to be proven at trial.

64. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

---

[15] The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce within the State of Illinois. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. § 501.201 et seq.); Illinois (815 ILCS 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A et seq.); Michigan (Mich. Comp. Laws § 445.901 et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010 et seq.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New York, (N.Y. Gen Bus. Law Secs. 349 and 350); New Jersey (N.J. Stat. § 56:9-1, et seq.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, et seq.) and Wisconsin (WIS. STAT. § 100.18, et seq.).

## COUNT II

### Violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1, et seq.
### (On Behalf of the Illinois Subclass, in the alternative to Count I)

65. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

66. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

67. Plaintiff and other members of the Illinois Subclass, as purchasers of the Products, are consumers within the meaning of the ICFA given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

68. Defendant's conduct in misrepresenting the benefits of its Product constitute the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

69. Defendant also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiff and other members of the Illinois Subclass knowing that consumers would rely on the advertisements and packaging and Defendant's uniform representations to purchase the Product.

70. Plaintiff and the other Illinois Subclass Members reasonably relied upon Defendant's representation that the Product was safe for personal use and, due to Defendant's omission, Plaintiffs relied on Defendant's labeling to conclude that the Product was not contaminated with any dangerous substance, including benzene.

71. Defendant's conduct, as described herein, took place within the State of Illinois and constitute unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

72. Defendant violated the ICFA by representing that the Product has characteristics or benefits that it does not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

73. Defendant advertised the Product with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

74. Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

75. Defendant engaged in misleading and deceptive advertising that represented that the Product was safe. Defendant chose to label the Product in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Product were exposed to and would be impacted by its omission and would reasonably believe that the Product was safe for personal use and did not contain any dangerous contaminants, including benzene. However, the Product is not safe, as it is contaminated with the carcinogen benzene.

76. Defendant intended that Plaintiff and each of the other Illinois Subclass Members would reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the true nature of the Product.

77. Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass Members to be deceived about the true nature of the Product.

78. Plaintiff and Class Members have been damaged as a proximate result of Defendant's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Product.

79. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Subclass Members have suffered ascertainable loss of money caused by Defendant's misrepresentations.

80. Had they been aware of the true nature of the Product, Plaintiff and Class Members either would have paid less for the Product or would not have purchased it at all.

81. Plaintiff and the Illinois Subclass Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

## COUNT III

### Fraudulent Concealment
### (On Behalf of the National Class)

82. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83. Defendant concealed and failed to disclose on the Product's packaging and labeling the material fact that the Product contained benzene, and that the Product was not safe or healthy for use.

84. Defendant had knowledge that the Product contained benzene, and that the Product was not safe or healthy for use.

85. Defendant had a duty to disclose that the Product contained benzene, and that the Product was not safe or healthy for use.

86. Defendant had superior knowledge or means of knowledge available to them and knew that Plaintiff and Class Members would rely upon the representations and omissions of Defendant regarding the quality and ingredients of its Product. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains benzene, especially at the point of sale.

87. Defendant's concealment was material and intentional because people are concerned with what is in the products that they are putting onto and into their bodies. Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy. Defendant knows that if it had not omitted that the Product contained benzene, then Plaintiff and the Class would not have purchased the Product at all; however, Defendant wanted to increase sales and profits.

88. Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and putting onto and into their bodies.

89. Defendant fraudulently concealed that the Product contained benzene and that the Product was not safe or healthy for use. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT IV

### Unjust Enrichment
### (On Behalf of the National Class)

90. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91. Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

92. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling the Product while misrepresenting and omitting material facts.

93. Defendant's unlawful conduct, as described in this Complaint, allowed Defendant to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

94. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

95. It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

96. Plaintiff and Class Members seek establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendant bear the costs of any notice sent to the Class(es);

C. Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendant to fully and appropriately recall the Product, to remove the claims on its website and elsewhere that the Product is safe to use, and to fully and properly disclose the safety risks associated with the Product to anyone who may still be at risk of buying and using the Product;

G. Ordering a jury trial and damages according to proof;

H. Awarding Plaintiff and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above;

I. Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K. Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

L. Ordering such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence if such amendment is needed for trial.

DATED: January 20, 2022            Respectfully submitted,

*/s/ Kevin Laukaitis*
Kevin Laukaitis
Jonathan Shub
**SHUB LAW FIRM LLC**
134 Kings Hwy E., 2nd Fl.
Haddonfield, NJ 08033
T: (856) 772-7200
F: (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*